First case in our call this morning. This agenda is People of the State of Illinois v. Fatima Givens. Agenda number four, case number 107-323. Counsel may proceed. Mr. Chief Justice, Honorable Justices of the Supreme Court, counsel, may it please the court. I am Assistant State Attorney Alan Spellberg and I represent the people of the State of Illinois. In this case, the appellate court reversed defendant's conviction based upon a claim never raised by the defendant, never responded to by the people, and unsupported by either the facts or the law. The facts of the case are simple. The defendant was convicted of possession of a controlled substance at a bench trial. At the trial, the people established that she was in possession of 21 packets of cocaine, amounting to just over one gram of cocaine. The defense offered a trial, not only the defense testimony claiming that it was not her drugs, but also the testimony of Terry Matthews, the leaseholder and resident of the one-bedroom apartment in which the defendant was found, who claimed that the consent to search, which was obtained by the police, was coerced from her. The trial court rejected the defense testimony and ruled that she was found guilty based upon credibility of the witnesses. On appeal. This consent to search, did that cover the whole apartment or just the common area? The whole apartment, Your Honor. Pardon me? The whole apartment. I think the briefs indicated that there was no indication that the two were staying there with no clothes and so forth. Your Honor, the defendant was an overnight guest in Terry Matthews' apartment. And that comes from Matthews' testimony? From Matthews' testimony, yes, Your Honor. From the defense evidence, it was established that she was an overnight guest, and for that basis, the defendant did have a reasonable expectation of privacy in the apartment, allowing her to challenge the search of the apartment. However, her expectation of privacy did not defeat Matthews' ability to grant valid consent to search her own apartment. And that was where the appellate court error occurred in this case. The appellate court in this case ruled that the defense attorney was ineffective for failing to file a motion to quash, arrest, and suppress evidence challenging Terry Matthews' ability to consent to search of her own apartment. That issue was never raised by the defendant, was not responded to by the people. And in that regard, the appellate court erred in that it became an advocate for the defendant. This court has long held that it is improper, other than for jurisdictional reasons, for a reviewing court to search the record for unargued or unbrief reasons in order to reverse the judgment. In fact, as long ago as People v. Aiken v. Gump in 1928, this court explained that while it is proper for an appellate court to affirm a judgment based on any reason in the record, it is improper to reverse a judgment based upon those claims that were never raised by the defendant. And the court should restrict itself to those claims that are raised by the parties. Counsel, if we agree with you that they improperly reached a forfeited issue, is it appropriate for this court to reach the merits? Your Honor, respectfully, I would say no because, again, the claim has not really been raised by the parties below. It was not asserted in the trial court. It was not asserted in the appellate court. This was something that the Illinois appellate court determined on its own after reaching the record, that it was inappropriate for the attorney to do that. The adversarial nature of our system requires the parties to bring the issues forth. The defendant did not bring this issue forth to the appellate court, and even in this court, the defendant does not truly claim that the appellate court properly reached the conclusion. What the defendant claims is that there may still be factual questions available, but that's not consistent with what the appellate court ruled. The appellate court ruled that Matthews did not have the lawful ability to grant any consent at all, given defendants sleeping in the bedroom in the apartment, and that her expectation of privacy as an overnight guest defeated Matthews' ability to grant any consent in itself. At any rate, we would be looking at the reasonable doubt issue, right? Yes, of course. We don't challenge the ability of this court or even the appellate court to address the reasonable doubt issue. In fact, the appellate court ruled that there was sufficient evidence to support the conviction when it remanded the matter for a new trial, but specifically pointing out that a new trial would not violate double jeopardy because the evidence presented at the first trial was sufficient to establish the guilt beyond a reasonable doubt. She was an overnight guest, right? Yes, that's correct, Your Honor. In a room that belonged to someone else? Yes. And there was another person in close proximity, right? Yes. To the drugs? Yes. Right. I'm sure we're going to hear that as part of the reasonable doubt. How do you address that there's a reasonable doubt based on those facts? Well, Your Honor, as this Court well knows, that the proper standard for reviewing evidence when there's a challenge to the sufficiency of the evidence is that it must be taken in the light most favorable to the prosecution. And in this scenario, the evidence established beyond a reasonable doubt that the defendant was in joint possession, in common possession, of those drugs that were found in that bedroom on the nightstand next to the bed in which she was sleeping. Certainly, the trial fact could have rejected any argument that she was not in possession, that they belonged to her boyfriend who was in the bed with her at the time also. But the trial court didn't accept that argument. It rejected those grounds on credibility and determined that these were appropriate for them to be her drugs under, excuse me, that they were her drugs and that she was in possession of them. And that ruling is entirely consistent with this Court's decision in People v. Schmalz, wherein this Court held that the mere fact that there are other people in the room who could have potentially been in possession of those drugs doesn't defeat the ability of the trial fact to determine that the defendant, in that case it was a girl in a house belonging to two men who was in a bedroom with several other people as they were partying. And when the police officer found them to be in possession of the marijuana, she was charged and she was convicted. And this Court ultimately determined that under the laws of constructive possession, actual constructive possession, she was properly convicted. This case is entirely controlling under Schmalz, and there's no reason for this Court to depart from the ruling in Schmalz to rule that the defendant here was not properly convicted. Mr. Spelberg? Yes. How do you distinguish Carter and Olson, where the United States Supreme Court held that the overnight guests have a reasonable expectation of privacy? Well, Your Honor, as we point out in our brief, and I believe in a footnote, we point out that the appellate court here misunderstood the import of Carter and Olson. What those cases establish is that the reasonable expectation of privacy that an overnight guest in an apartment has, in a home has, is the ability, they have it, that gives them the ability to challenge the lawfulness of the search. If they did not have an expectation of privacy in the properties, they could not, as a matter of law, even bring a motion to quash arrest. We don't dispute that the defendant here had that reasonable expectation of privacy. But the legal question here, and the question which the appellate court got wrong, is whether or not that expectation of privacy defeated Terry Matthews' ability to consent to the search in her own home. And that's where the appellate court was wrong, and that's why this is such a troubling case. Because under the authority of both this court and the United States Supreme Court, the mere fact that one person gives consent, the person who gives the consent to search is not the defendant, isn't enough to defeat the validity of the search. Because the law is clear that anyone who has common or apparent authority over the premises has the ability to give lawful and valid consent to the search, and that the police are entitled to rely upon that. Let me get back to that consent. Sure. Just one more time, just a factual question. There was a form that was signed. Yes. And is that form a part of the record? Yes, I believe it is. And it covered both? Actually, excuse me, I do not believe the consent, it is not part of the record. Excuse me, I'm sorry. The consent search form is not made part of the record. Did that form cover the whole apartment or just the common area? The testimony is established at the trial, established that Terry Matthews granted consent to search the apartment. And so the reasonable understanding of both of those options. I don't know what the form says. No, I do not. It just said it was a consent to search. Is that form available? It's not a record. It's not a record, Your Honor. But regardless as to whether or not the form specifically referred to the common areas or the whole apartment or whatever it specifically provided, this was a one-bedroom apartment in which Terry Matthews was not only the leaseholder but the resident. She clearly had the authority to grant the consent to search to her own bedroom. And the case law is clear which supports that. In United States v. Matlock and in People v. Simpson, both the United States Supreme Court and this Court made clear that the fact that someone other than the defendant has granted consent to search over the property is more than sufficient to validate the search. And the reason why is when people share property, when they share homes, when they live in other people's homes, when they are together in some way, you establish the risk that other people have the ability to use and see your property and can grant valid consent. And so in People v. Simpson specifically, this Court held that a resident and leaseholder of an apartment could grant valid consent to the search of the defendant's property because it was also her property. If Matthews had relinquished the use of the bedroom. Pardon? I'm sorry? If Matthews had relinquished the use of the one bedroom in the apartment, and it allowed this couple to use it, would she then have given up the control of that bedroom while they were guests? It's my understanding that she knocked on the door that morning and gave them some kind of message she was going out. But she knocked on that door before going into the bedroom to talk with them? Yes. How does that impact upon? Your Honor, I don't believe it impacts upon the legal analysis in any way. The fact that Terry Matthews was respectful to the defendant and her boyfriend while they were sleeping in the bed and knocked on the door so as not to disturb them, who knows what she may have walked into the middle of. Does that indicate that she was sleeping perhaps elsewhere? She may have been sleeping in the living room. I don't know. That record wasn't borne out at trial. I can't answer and I can't speculate as to where she may have been in any particular point. But the key to the legal analysis is that even if Terry Matthews didn't have the actual common authority to grant the search, she still had the apparent authority. And in the cases of Illinois v. Rodriguez and People v. Bull, both the U.S. Supreme Court and this Court made clear that a police officer is reasonable in relying upon a person's assertion of authority to grant consent when the circumstances established that they would reasonably believe that they have that authority to do so. Certainly, the leaseholder and the resident of the single-bedroom apartment would appear to have the authority to grant consent to search the entire apartment. And so for that reason, it was reasonable for the police officers at a minimum to rely upon that assertion of apparent authority. It's our position that the record as it is established right now clearly demonstrates that she had the actual authority to do so. But even if she didn't, she still had the apparent authority. Excuse me, Mr. Spellman. Does the record also reflect the fact that there might have been a force regarding the consent by the police officers? Well, Your Honor, that was a question that was asserted by the defense at the trial, and it was rejected by the trial court. The defense attorney raised that evidence through Terry Matthews, made that argument and closing argument to the trial court as to why the defendant should not be found guilty, and the trial court rejected it. And so clearly there is no longer a factual question in that regard because the trier fact with the authority to make that determination has already done so. Back to your first point regarding the forfeiture issue here. You cite Hunt, right, for the proposition. Yes. And Hunt did say that the appellate court should in sua sponte decide an issue. Yes. But then, unlike what you're asking us to do here, went on to decide the issue, right? Yes, that's correct. Because it was briefed. That is correct. So is there any difference between what this court didn't Hunt and what we should do now? No, Your Honor. Of course this court has the authority to decide issues that are presented before it. My response to Justice Garmon's question as to whether or not this court should reach it was the assertion that this court should not reach the issue in order to clarify that the appellate court had truly exceeded its authority here and that there's no reason to reach an issue which was never raised before and is not supported by either the law or the facts. So we should not be like the repeating threatening parent this time? We really mean it? Don't address the issue? Yes, Your Honor. All right. But there's no real factual difference in what occurred by the court in Hunt and what we'd be doing here? No, Your Honor. There is not. And clearly this court does have the authority, and that is why we presented in our brief not only an assertion that the appellate court had truly exceeded its authority, but that it was wrong as a matter of law. And just to take a step back, the appellate court raised this issue on its own without any reference from the defendant, without any argument from the people. It was apparently raised at the oral argument in one or two questions. But beyond that, no decision was ever made until it reached its opinion, announcing that the leaseholder and resident of the one-bedroom apartment could not, as a matter of law, grant valid consent to search that apartment. At that point, the people filed a petition for a hearing, specifically citing all the case law, the same case law that appears in our briefs before this court, citing all the case law establishing that there was both actual and apparent authority, and so therefore any failure for the attorney to file a motion to quash, arrest, and suppress evidence based on the failure for Terry Matthews or the inability of Terry Matthews to grant consent would have been a futile exercise. And so therefore it couldn't amount to ineffective assistance of counsel. It was clear from the appellate court's opinion that the appellate court was unaware of this precedent. It did not reference it in any way. It made assertions which were inconsistent with the precedent. However, even after the people filed a petition for a hearing establishing that there was clearly a legal basis for the consent and that there would be no basis of any sort for a frivolous motion to quash, arrest, and suppress evidence, the appellate court persisted in its ruling. And that is the reason why we ask this court to clearly state that the appellate court's ruling, when it exceeded its authority, when it reached an issue which had never been raised by the parties, and if this court reaches the merits, to clearly declare that there is nothing inappropriate with an attorney failing to file a motion to quash, arrest, and suppress evidence based upon the ability of the leaseholder and resident of the apartment to consent to the search of that apartment. And for that reason, the people respectfully request that this court reverse the appellate court's decision and reinstate the defendant's conviction. Thank you. Good morning, Your Honors. My name is Elizabeth Boddy, and I represent the appellee, Fatima Givens. Before I respond to the State's contentions, I'd like to point out to this court that it does not need to resolve them because this court can instead reverse Givens' conviction outright due to the State's failure to prove beyond a reasonable doubt that Givens constructively possessed the cocaine found in Terry Matthews' bedroom. Now, we're not arguing that two people cannot jointly possess drugs. We're simply arguing there wasn't enough evidence in this case because the State's evidence did not establish proof beyond a reasonable doubt that Givens had knowledge of the presence of the cocaine. Counsel, is it the evidence in this case that 21 packets of cocaine were viewed in plain view by the entering officers? An officer testified that the drugs were in plain view, but keep in mind we're not talking about a large sum of drugs. We're not talking about a kilo of cocaine that would have been obvious to anyone. We're talking about 1.8 grams of cocaine. But divided amongst 21 packets. Right, obviously very small packets. And this evidence was on a nightstand that was within arm's reach of the bed, but we don't know on what side of the bed the nightstand was located. We don't know on what side of the bed Fatima Givens was sleeping. So we can't say that the drugs were within arm's reach of Givens because Givens could have been on the side of the bed that was not next to the nightstand. And if she was sleeping on the opposite side of the bed, she may not have seen the drugs that were on the nightstand, assuming nothing was even blocking her view, she may not have seen the drugs that were on the opposite side of the bed. Especially drugs that were a small amount, 1.8 grams of cocaine, could have easily gone unnoticed by Givens. Also, the officers testified that she was half asleep in this bedroom. So we don't, we have something less than mere presence here. We have mere presence while half asleep in a room containing drugs. Yes, the officer said the drugs were in his plain view. That doesn't mean they were visible to Givens because they could have easily gone unnoticed by Givens, assuming they were in that room when she was awake, which we don't even know. There's no evidence that the drugs were in that room before she went to bed and when she was awake. All we know is that the evidence was in that room when she was half asleep, according to the officers. One's mere presence while half asleep does not create an abiding conviction of guilt. And that's all we have here. We have no fingerprint evidence. She didn't make an incriminating statement. She didn't try to hide the drugs. We have her mere presence while half asleep. And this case is completely distinct from Schmalz. This case is not at all like Schmalz. In Schmalz, the defendant was in a small room. There was considerable marijuana, smoke, and haze. There was large drug paraphernalia that was obviously noticeable. The defendant made an incriminating statement to the police officer. It was obvious that the defendant knew about the drugs. Here, there is insufficient evidence that Gibbons knew about the drugs in the room. Mere presence while half asleep simply is not enough. There's not evidence that the drugs were visible to her or that she knew about the drugs. Therefore, because the evidence does not create an abiding conviction of guilt, this Court should reverse Gibbons' conviction outright due to the insufficiency of the evidence, an issue that the appellate court never did decide. Now, as to the appellate court's authority to sua sponte, raise, and decide an issue, the State hasn't cited a single case prohibiting the appellate court's actions. Sure, the cases say that an appellate court should not ordinarily or normally sua sponte, raise, and decide an issue. But that doesn't mean an appellate court can't. To the contrary, the case law establishes that an appellate court has the power to do so in the interest of justice. Was the issue raised at trial? The issue was not raised at trial. Was it raised on the appellate brief? On appeal, I raised a slight variation of the issue, which was that trial counsel was ineffective for not moving to suppress the evidence on grounds that Terry Matthews' consent was coerced. Related to that ground is whether Terry Matthews had the authority to consent to the search. So this was a slight variation of the issue that was actually raised. Was it argued? It was this precise issue was not argued. The appellate court did mention it during oral argument and questioned the attorneys about it during oral argument. But, again, it was a slight variation of the issue that was actually raised. The State thinks the appellate court should have just ignored this issue, should have just pretended that it didn't exist. Well, I think we can all agree that if learned judges in a criminal case recognize an issue involving a deprivation of a constitutional right that the parties didn't raise on appeal and the learned judges had to ignore the issue, had to turn away, I think we could all agree that injustice would result not only to the criminal defendant but to the integrity of the judicial system as well. But couldn't the forfeited privacy issue be raised in a post-conviction proceeding? Well, when there are enough facts in the record, as there was in this case, the issue should be raised on appeal. And if it's not raised on appeal, then you run into forfeiture problems down the road. Here there were enough facts to raise the issue. The evidence... But if it had been raised in a post-conviction proceeding, there would have been an opportunity to make a full record on this before it was argued. Well, keep in mind that the appellate court in this case merely remanded the case for a hearing on the matter. The appellate court didn't say that the motion should have been granted or that Terry Matthews lacked authority. The trial court found counsel was ineffective for not making this motion and remanded the case for a hearing on the matter. The issue should have been litigated. Because the facts in this case raise a question as to Matthews' authority to consent to the search. Matthews' mere leasehold interest in the property didn't give her an automatic right to consent to the search of the bedroom that was occupied exclusively by Gibbons and her boyfriend. Keep in mind that Gibbons wasn't an ordinary house guest. She was a house guest who had the power and capacity to invite her boyfriend over to spend the night with her, and she exercised that power and invited her boyfriend to spend the night in that room with her. She stayed in a private bedroom, not a common area of the house. She closed the door. There's no evidence that Matthews ever entered the room to get anything or for any reason to go in the room. She knocked on the door. Excuse me, Ms. Powdy. The appellate court used two U.S. Supreme Court cases, right? Carter and Olson, to support their privacy determination. But I see they left out this sentence from the Carter case, and I wonder what we're to make of this. Let me quote the sentence. From the overnight guest's perspective, he seeks shelter in another's home precisely because it provides him with privacy, a place where he and his possessions will not be disturbed by anyone but its host and those his host allows inside. What are we to make of that? Well, you know, I think in the majority of cases, the host will have authority to consent to a search of the rooms in her home or apartment, but that's not in every case. And in this case, because there are enough facts to raise questions about her authority to consent to the search, I assert that Gibbons's right to privacy here trumps Matthew's authority to consent to the search of that bedroom in light of the facts that I just mentioned. There are enough facts in this case to raise a question on this issue, and defense counsel should have litigated it. Gibbons deserves the opportunity to have this issue litigated, and that's all the appellate court held. The appellate court merely remanded it for a hearing on the matter. This court need not find that Matthew's actually lacked authority to consent to the search. It need only find that there's a reasonable probability that the motion would have been successful, and Gibbons has made this showing. This court should also remand the case for a hearing on the related issue of the voluntariness of Matthew's consent. Again, there are... So it's not a question of law, then? It's a factual question as to whether or not a particular host has the right to consent? Yes, it depends on the totality of the circumstances in the case. And here the totality of the circumstances indicate that there was a question of fact regarding the authority to consent to search, and shows that Gibbons and her boyfriend exclusively occupied this bedroom and reasonably expected their use of the room to remain private. As to the voluntariness of the consent, again, there are questions regarding this issue as well that should have been litigated. The police officers testified they received a tip from a confidential informant that drugs were being sold out of this apartment. Now, suspiciously, they didn't get a warrant or even try to get a warrant. They instead went to the apartment where they just happened to run into Matthew's outside and just happened to know that she was a tenant of this apartment and then got her consent. Now, Matthews, in contrast, testified she was outside. Three police officers came up to her, forcibly took her keys, entered the apartment while one officer stayed outside with her. They searched the apartment. The other officer then brought her upstairs into the apartment, and the police officers gave her a form to sign and told her if she did not sign the form, she would lose her apartment, and if she did sign the form, she would be proving that she didn't know about the drugs. Crystal Giles, a neighbor who happened to be outside, testified that she saw police officers put Matthews up against a wall outside the apartment building, go through her pockets, take out her keys, go inside of her apartment. Giles never saw Matthews sign any documents outside. And, of course, we have Fatima Gibbons' testimony who testified that she was in the bedroom when three police officers rushed in, handcuffed her to a boyfriend, brought the two to the living room, searched the apartment, and then obtained the consent to search, the signed consent to search form. Now, contrary to the State's argument, the trial court never ruled on the credibility of these defense witnesses. In finding Fatima Gibbons guilty, the trial court said, judging the credibility of the witnesses as to the possession of a controlled substance, I find Fatima Gibbons guilty. The trial judge never had the opportunity to rule on the credibility of the witnesses as to the voluntariness of the consent, which is a separate and distinct matter from whether or not Gibbons possessed the cocaine. The trial judge never had the opportunity to rule on it because the defense attorney never litigated this matter. Defense counsel filed a motion to suppress, but then withdrew it before trial. Nonetheless, defense counsel decided to present the evidence that would have supported the motion and then note the issue during closing argument. Oh, yeah, judge, by the way, there's an issue regarding the voluntariness of the consent. Well, the closing argument was too late. The issue at trial was Fatima Gibbons' guilt or innocence, not the voluntariness of the consent. The judge never had the opportunity to rule on the witnesses' credibility as to the voluntariness of the consent. This issue should have been litigated. Fatima Gibbons deserves to have this issue litigated, and counsel is ineffective for not pursuing this motion. This court should, therefore, remand this case for hearing on the matter. It should find counsel ineffective for not pursuing the two motions and remand the case for hearing on the legality of the search. Thank you. Thank you. Briefly, Your Honor, so I could just correct some of the statements that were made. First off, just to clarify, the appellate court here did not simply remand the matter for hearing. It explicitly reversed the defendant's conviction. It reversed the defendant's conviction because it found, as a matter of law, that Terry Matthews could not have granted consent to search and that, therefore, the attorney was ineffective for failing to make a motion to quash arrest and suppress evidence. That is not what defense counsel just asserted occurred in this case. Instead, defense counsel asserted that the appellate court recognized that there were some questions to be determined and remanded it for a hearing. Well, that's not what happened. As I stated, the appellate court reversed the conviction, and the only way the appellate court could have reached the conclusion that it reversed the conviction is if it found that consent could never be validly given in this scenario. Moreover, I just want to point out that the fact that there may have been questions raised, the place to resolve those questions are in a post-conviction proceeding, not in a direct appeal where the appellate court implies its own finding of ineffective assistance of counsel, because it ignores the fact that the attorney has the ability to look at the current state of the law and make a strategic decision as to what is the best method of proceeding. In this case, any reasonable attorney would have looked at the extensive body of law from both the U.S. Supreme Court and from this Court regarding both common and apparent authority and determined that there would be no basis to file a motion to quash arrest and suppress evidence. In regards to the assertion regarding the voluntariness of the consent and that it was raised too late and should have been litigated earlier, again, the defendant's argument ignores the strategic decisions made by the defense attorney. In this case, the defense attorney decided that the best place to raise the question of Terry Matthews' assertion that she was coerced in giving the consent was not in a separate motion but at the trial. And that's a legitimate decision because at the trial, the attorney would have no burden of proof to establish his defendant's innocence. Instead, the attorney could just simply raise evidence to try and establish reasonable doubt regarding the defendant's guilt. And if he could establish through Terry Matthews that the police officers had lied regarding the ability to obtain valid consent, he would certainly have put a large hole in the prosecution's case. And so, therefore, it was certainly appropriate to wait until the trial to litigate this issue instead of trying to do it beforehand and giving the state an earlier opportunity to cross-examine Ms. Matthews. Also, in regard to counsel's assertion that credibility was not made, that credibility determination was not made, when she pointed out that the trial court specifically said credibility is to the lesser included offense, well, the reason why the trial court stated that was because the court had already granted a motion for directed verdict and the charge defense of possession of a controlled substance with intent to deliver. So at the time that the court was making its findings, and specifically its credibility findings, it was only considering the lesser included offense of possession of a controlled substance. And so, therefore, when the court stated that based upon the evidence that was presented, considering only the proper evidence that was presented, judging the credibility of the witnesses with regard to the lesser included offense of possession of a controlled substance, there will be a finding of guilty, the court was explicitly making a credibility determination regarding the witnesses. The court was clearly rejecting the defense evidence, the defendant's testimony, Terry Matthews' testimony, and instead it was crediting the people's witnesses, including the rebuttal testimony of Officer Stephen Lotz, who specifically denied coercing any consent from Terry Matthews and explained the manner in which he obtained her voluntary consent to search the apartment. Finally, I just wish to point out that counsel got up here and asserted that the people have offered no case where it says that it is inappropriate for the appellate court to do what it did here, which is to identify an issue sua sponte, to search the record for wrongs to right, and to reverse the conviction on that. However, what counsel completely ignores is this court's recent decision in People v. Hunt. In Hunt, that is exactly what happened. And this court clearly held that it was error for the appellate court to sua sponte, identify an issue, and then to rule upon that grounds. The same thing occurred here. And for that reason, we respectfully request that this court reject the appellate court's opinion, reverse their judgment, and affirm the trial court's ruling. Thank you. Thank you, counsel. Case number 107-323 will be taken under advisement as agenda number four.